# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

JEROME FERRIER,

      Petitioner,

v.                                          CASE NO. 4:17cv178-RH-EMT

FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER DENYING THE PETITION AND
## GRANTING A CERTIFICATE OF APPEALABILITY

A Florida state-court jury convicted the petitioner Jerome Ferrier on six counts of attempted first-degree murder. The minimum mandatory sentence was life in prison because the victims—the six individuals Mr. Ferrier attempted to murder—were law enforcement officers engaged in the lawful performance of a legal duty. The fact that the officers were engaged in the lawful performance of a legal duty was found by the sentencing judge, not the jury. This was permissible at the time. After the Florida First District Court of Appeal affirmed the conviction

and sentence, but before the deadline for a certiorari petition, the United States Supreme Court decided *Alleyne v. United States*, 570 U.S. 99 (2013). That decision recognized a jury right for facts essential to a minimum mandatory.

Mr. Ferrier now seeks relief in this court by petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition is before the court on the magistrate judge's report and recommendation, ECF No. 79, which concludes the petition should be denied, and the objections, ECF Nos. 90 and 91. I have reviewed de novo the issues raised by the objections.

This order accepts the report and recommendation and adopts it as the court's opinion except on the *Alleyne* claim. This order reaches the same result on the *Alleyne* claim but on a different ground: if given the chance, a properly instructed jury plainly would have found that the officers were engaged in the lawful performance of a legal duty. The *Alleyne* error thus did not have a "substantial and injurious effect or influence" on the result, precluding relief. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

I

Concerned about Mr. Ferrier's welfare, his ex-girlfriend provided law enforcement officers a photograph of Mr. Ferrier holding a gun to his head. Officers conducted a welfare check at Mr. Ferrier's apartment. His car was in the parking lot, indicating, according to the girlfriend, he was "more than likely"

home. ECF No. 71-2 at 292. When Mr. Ferrier did not respond to the officers' knocks on the door and extensive other efforts to advise any occupant of their presence, they obtained a key from the landlord and opened the door. Mr. Ferrier met them with gunfire. Officers retreated, and reinforcements arrived. Mr. Ferrier kept firing. Mr. Ferrier shot one officer and held others off for a substantial period. Mr. Ferrier was eventually shot by an officer and taken to a hospital. The officer and Mr. Ferrier both survived.

The state charged Mr. Ferrier with 10 counts of attempted first degree murder—a separate count for each of 10 law enforcement officers present as Mr. Ferrier fired away. The case went to trial in September 2011—before *Alleyne*. The jury convicted Mr. Ferrier of six counts of attempted first degree murder, two counts of the lesser included offense of attempted second degree murder, and two counts of the lesser included offense of aggravated assault on a law enforcement officer.

By special interrogatory, the jury found the victims were law enforcement officers. But the jury was not asked to determine whether the officers were engaged in the lawful performance of a legal duty. The discussion of this at the charge conference was muddled, but before sentencing Mr. Ferrier clearly asserted this violated the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). ECF No. 71-2 at 65-73. Nobody asserted the contention had not been preserved at the charge

conference. The court rejected the contention but did not explain the ruling. *Id*. at 73.

Before sentencing, the court vacated the aggravated-assault convictions. The court imposed concurrent life sentences on all six first-degree counts and both second-degree counts.

Mr. Ferrier appealed raising multiple grounds, including failure to submit the lawful-performance issue to the jury. *See* ECF No. 71-5 at 88 (counseled appellate brief raising the issue but not citing *Apprendi*); *see also id.* at 145 (raising the issue and citing *Apprendi*). The Florida First District Court of Appeal affirmed on the first-degree counts without discussing the lawful-performance issue. The court vacated and remanded the second-degree convictions on unrelated grounds. The state did not go forward on those counts on remand. Mr. Ferrier thus stands convicted only on the six first-degree counts. He is serving concurrent life sentences on those counts.

II

In *Apprendi*, the Supreme Court held that a defendant's right to a jury trial applies to any fact, other than a prior conviction, that increases the maximum penalty for an offense. In *Alleyne*, the Court said the same is true for a fact that increases the *minimum* penalty for an offense. *See Alleyne*, 570 U.S. at 103 & 108.

The maximum sentence in Florida for attempted first-degree murder with a gun is life in prison. The *minimum* is life if the victim is a law enforcement officer engaged in the lawful performance of a legal duty. The maximum for attempted second-degree murder with a gun is 30 years but goes up to life if the victim is an officer engaged in the lawful performance of a legal duty.

The jury found Mr. Ferrier guilty of six counts of attempted first-degree murder with a gun. Because the *maximum* penalty on these counts was life, regardless of whether the victims were officers engaged in the lawful performance of a legal duty, *Apprendi* itself did not require a jury finding on the lawful-performance issue. But the *minimum* penalty on these counts was life only if the victims were law enforcement officers engaged in the lawful performance of a legal duty. Under *Alleyne*, Mr. Ferrier was entitled to a jury trial on the lawful-performance issue. He was denied that right.

Mr. Ferrier of course did not cite *Alleyne* in the trial court or on direct appeal; *Alleyne* had not been decided. But he *did* assert the failure to submit the lawful-performance issue to the jury violated the *Apprendi* principle. As it turns out, he was right, as *Alleyne* later held.

Four circumstances do not change the conclusion that Mr. Ferrier's constitutional right—the right later recognized in *Alleyne*—was violated.

First, the court could have sentenced Mr. Ferrier to life as a matter of discretion even had there been no minimum mandatory. But there is no reason to believe this is what the court did and every reason to believe the contrary. The state insisted at sentencing that the minimum mandatory applied. The court expressed no disagreement. The court gave no other explanation for choosing a life sentence rather than a term of years—an explanation one would have expected had this been an exercise of discretion. And on the second-degree counts, the court also imposed a life sentence. The life sentence on those counts was lawful only if the victims were officers engaged in the lawful performance of a legal duty. So imposing a life sentence on those counts necessarily meant the court found this fact—the same fact that mandated a life sentence on the first-degree counts. There is simply no reason to believe the court would have imposed the same sentence without this factual finding—a finding that, as *Alleyne* now teaches, could properly be made only by the jury, and that, on the second-degree counts, could properly be made only by the jury under the square holding of *Apprendi* itself.

Second, *Alleyne* is not retroactively applicable on collateral review. *See Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285-86 (11th Cir. 2014). But when *Alleyne* was decided, Mr. Ferrier's conviction was not yet final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This is the standard that triggers the one-year limitations period

for a § 2254 petition, but the same standard applies to retroactivity analysis. *See, e.g.*, *Knight v. Fla. Dep't of Corr.*, 936 F.3d 1322, 1334 (11th Cir. 2019) (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003)).

The chronology is this. The jury returned its verdict on September 8, 2011. The First District Court of Appeal issued its opinion affirming the first-degree convictions but vacating and remanding the second-degree convictions on March 18, 2013. The court denied a timely petition for rehearing on May 6, 2013. The Supreme Court decided *Alleyne* on June 17, 2013. The deadline for a petition for certiorari to review the First District's decision was 90 days after denial of the rehearing petition or, more precisely, the next workday, that is, August 5, 2013. So when *Alleyne* was decided, Mr. Ferrier's first-degree convictions were not yet final. And this is true even if the date when the convictions became final was not extended further, to 90 days after disposition of the second-degree counts on remand. The state abandoned those counts on July 11, 2013.

Third, in the run up to the trial, Mr. Ferrier said a lawful-performance-of-official-duty issue should be decided by the judge as a matter of law. Under Florida's stand-your-ground law, a person is presumed to have a reasonable fear of imminent peril from a person unlawfully and forcibly entering the person's residence. *See* Fla. Stat. § 776.013(2). But the presumption does not apply when the entry is made by a properly identified law enforcement officer performing an

official duty. *See id*. § 776.013(3)(d). Florida law requires the judge to address any stand-your-ground defense in the first instance and to acquit the defendant when the facts as found by the judge require that result. But the judge's rejection of the defendant's factual contentions does not bind the jury. So Mr. Ferrier's assertion that the stand-your-ground defense presented an issue for the judge was not a waiver of the right to a jury trial on that issue. And even more clearly, Mr. Ferrier's assertion was not a waiver of the right later recognized by *Alleyne* to a jury trial on any fact that would increase the minimum mandatory sentence. Mr. Ferrier did not invite *Alleyne* error.

Fourth, consistent with this analysis, the jury instructions addressed the stand-your-ground defense. Included was a discussion of the presumption and the exception for a law enforcement officer performing an official duty. This does not mean, though, that the jury necessarily decided these officers were lawfully performing their legal duties. The jury could have rejected the stand-your-ground defense for a number of reasons, including, for example, that Mr. Ferrier kept shooting when the officers retreated and for long after they attempted to enter the apartment.

In sum, imposing a minimum mandatory sentence based on the fact that the victims of the attempted first-degree murders were law enforcement officers engaged in the lawful performance of a legal duty was an *Alleyne* violation.

III

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal habeas court may set aside a state court's ruling on the merits of a petitioner's claim only if the ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the ruling "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A long and ever-growing line of cases addresses these standards. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86 (2011); *Williams v. Taylor*, 529 U.S. 362 (2000); *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117 (11th Cir. 2012).

If, however, no state court has addressed a properly preserved claim on the merits, federal review is de novo. *See, e.g.*, *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1151 (11th Cir. 2017) (quoting in part *Cone v. Bell*, 556 U.S. 449, 472 (2009)).

When the First District rendered its decision, *Alleyne* had not been decided. The clearly established federal law, as determined by the Supreme Court, was set out in *Harris v. United States*, 536 U.S. 545 (2002), which *Alleyne* later overruled. When rendered, the First District's decision was consistent with—not contrary to

or an unreasonable application of—clearly established federal law. The same is of course true of the trial court's earlier decision.

Neither court explicitly addressed a defendant's right under *Apprendi* or the later-recognized right under *Alleyne*. But so long as one of those courts is deemed to have considered and rejected Mr. Ferrier's claim on the merits, the decision is still entitled to AEDPA deference. *See Harrington*, 562 U.S. 86, 98-99 (2011) (requiring AEDPA deference to a state-court decision even when unexplained); *see also Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1210-23 (11th Cir. 2013); *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1253-57 (11th Cir. 2002).

That the law changed before the conviction became final means that, as set out above, retroactivity analysis does not render the state-court decision immune from review under *Alleyne*. But retroactivity analysis and AEDPA are different concepts; a federal habeas petitioner must satisfy both. *See Knight v. Fla. Dep't of Corr.*, 936 F.3d 1322, 1331 (11th Cir. 2019). So if the state trial or appellate court is deemed to have considered and rejected this claim—understandably labeled by Mr. Ferrier at that time as an *Apprendi* claim—on the merits, Mr. Ferrier is not entitled to relief.

This order does not rest the decision on this ground because it is not clear that the trial or appellate court considered and rejected this claim on the merits. Neither discussed the claim. Neither said *Apprendi* applied only to a maximum

sentence, not a minimum, or gave any other explanation for rejecting Mr. Ferrier's assertion that he was entitled to a jury finding on lawful performance of a legal duty. Neither recognized the clear *Apprendi* error on the second-degree counts.

The state courts were not required to issue an opinion or even explain their rulings. *See Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1151 (11th Cir. 2017) (citing *Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1211 (11th Cir. 2013)). But if they just skipped over the issue—if they did not rule on the issue on the merits—review on this federal § 2254 petition is de novo. *See id.* (holding that if no state court has adjudicated the merits of a properly presented claim, federal habeas review is not subject to the deferential AEDPA standard but is instead de novo).

IV

Another consideration complicates the analysis. It is not clear whether Mr. Ferrier has attempted to assert an ineffective-assistance claim related to the *Alleyne* error.

Mr. Ferrier's trial and appellate attorneys invoked the *Apprendi* principle. To provide effective assistance, they were not required to more clearly anticipate *Alleyne* or to articulate its eventual holding with precision. There is no reason to believe their performance on this issue through issuance of the First District's decision was deficient.

But when *Alleyne* was decided, there was still time to file a certiorari petition. The result might well have been a grant, vacate, and remand—a GVR. Even so, to prevail on any claim of ineffective assistance, Mr. Ferrier would have to show both deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Even if the failure to file a certiorari petition constituted deficient performance, Mr. Ferrier suffered no prejudice. This is so because on remand, the *Alleyne* error would have been held harmless, as shown by the factual analysis in the next section of this order.

This order makes no ruling on whether the failure to file a certiorari petition constituted deficient performance, whether any ineffective-assistance claim was exhausted in state court, or whether any such claim is encompassed in the § 2254 petition now before this court.

V

Errors under *Apprendi* and its progeny, including *Alleyne*, are subject to harmless-error review. *See United States v. Anderson*, 289 F.3d 1321, 1326-27 (11th Cir. 2002) (addressing *Apprendi*); *Plasencia v. Sec'y, Fla. Dep't of Corr.*, 606 F. App'x 511, 515 (11th Cir. 2015) (addressing *Blakely v. Washington,* 542 U.S. 296 (2004)); *Myles v. Sec'y, Dep't of Corr.*, No. 4:17-cv-326-RH/GRH, 2019 WL 968880 at *3 (N.D. Fla. Feb. 27, 2019) (addressing *Alleyne*). This has been recognized too many times to count, usually without discussion. Thus, for

example, when *Apprendi* was decided, the hundreds of drug cases that were still on appeal after having been tried to verdict under the old regime, without submitting drug quantity to the jury, were not all retried.

On collateral review, the harmlessness standard is whether the error "had substantial and injurious effect or influence" in determining the outcome. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). To prevail, Mr. Ferrier must show that a reasonable jury, when properly instructed, could have found the evidence insufficient to establish beyond a reasonable doubt that these officers were engaged in the lawful performance of a legal duty.

This Mr. Ferrier cannot do. The evidence established the critical facts without dispute. Mr. Ferrier's girlfriend provided officers a photograph of Mr. Ferrier holding a gun to his head. This made it appropriate to conduct a welfare check. Mr. Ferrier's car was in the parking lot, which the girlfriend said meant he was more than likely at home, but he did not respond to the officers' knock on the door and other efforts to advise him of their presence.

The officers were entitled to open the door and, if necessary, enter the premises to ensure Mr. Ferrier was not injured and in need of emergency assistance. Proper instructions would have explained these principles to the jury, leaving to the jury only factual questions such as whether Mr. Ferrier's girlfriend actually provided information to the officers as they claimed, whether they

knocked and otherwise attempted to alert Mr. Ferrier to their presence, and whether they opened the door intending to check on him. The evidence establishing these facts was undisputed then and is still undisputed today. No reasonable jury would have disbelieved this evidence.

The *Alleyne* error was harmless. Mr. Ferrier is not entitled to relief.

VI

Rule 11 of the Rules Governing § 2254 Cases requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See Miller-El v. Cockrell*, 537 U.S. 322, 335-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see also Williams v. Taylor*, 529 U.S. 362, 402-13 (2000) (setting out the standards applicable to a § 2254 petition on the merits). As the Court said in *Slack*:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were " 'adequate to deserve encouragement to proceed further.' "

529 U.S. at 483-84 (quoting *Barefoot*, 463 U.S. at 893 n.4). Further, to obtain a certificate of appealability when dismissal is based on procedural grounds, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484.

Mr. Ferrier has made the required showing only on the *Alleyne* issue.

VII

For these reasons and, for other issues, the reasons set out in the report and recommendation,

IT IS ORDERED:

1. The report and recommendation is accepted.

2. The clerk must enter judgment stating, "The petition is denied with prejudice."

3. A certificate of appealability is granted on this issue: whether this 28 U.S.C. § 2254 habeas petition has properly been denied despite a violation of *Alleyne v. United States*, 570 U.S. 99 (2013).

4. The clerk must close the file.

SO ORDERED on November 23, 2020.

s/Robert L. Hinkle  
United States District Judge
